New-Haven,
June, 1817.

## COLE *against* WOOSTER.

THIS was a *scire-facias* against *Wooster*, as the agent, trustee and debtor of *John Platt*, an absent and absconding debtor.

The cause was tried at *New-Haven*, *January* term 1817, before *Trumbull*, *Hosmer*, and *Gould*, Js.

On the trial, it appeared, that some time previous to leaving the copy in service with the defendant, one *Candee*, a constable, had attached, at the suit of one *Strickland*, the personal estate of *John Platt*, to the value of about fifty dollars, which was delivered to the defendant, and by him receipted. This property he had in his possession when the copy was left. It was never delivered back to the constable, or taken in execution and sold at vendue, to satisfy *Strickland's* debt; but it was delivered by the defendant to *Nathan Platt*, a brother of *John Platt*, upon an agreement between the defendant and *Nathan Platt*, that the latter should obligate himself by bond, to pay *Strickland's* debt, and indemnify the defendant against any claim of the constable, by virtue of the receipt; and *Nathan Platt*, in behalf of the defendant, did pay said debt, and restored part of said property to *John Platt*. The plaintiff thereupon claimed, that the court ought to charge the jury to find for him the value of the property in the defendant's hands at the time the copy was left in service with him. The defendant resisted this claim. And the court charged the jury, that such payment by *Nathan Platt*, in behalf of the defendant, continued the lien on the property to the amount of the debt so paid, and that the defendant was liable for the surplus of the property only, if any remained, after discharging such lien and debt. The jury having found a verdict for the defendant, the plaintiff moved for a new trial on the ground of a misdirection; and the motion was reserved in the usual manner.

*N. Smith*, in support of the motion, contended, that the only mode in which the first attaching creditor could preserve his lien upon the property attached, against the claims of a second attaching creditor, was, by taking it in execution, and selling it at the post, according to law.

Where property was attached, and delivered to a receipt-man, but was not afterwards taken in execution and disposed of in due course of law; it was held, that such receipt-man was liable as garnishee in a process of foreign attachment, at the suit of another creditor for the value of the property in his hands at the time of leaving the copy, though it had been subsequently applied, by his procurement, in payment of the first attaching creditor's debt.

*Staples* and *Hitchcock,* contra, contended, 1. That the property in question, at the time the copy was left with the defendant, was in the custody, and under the controul of the law, and was not liable to this process. *Wilder* v. *Bailey & al.* 3 *Mass. Rep.* 289. The defendant was the mere bailee of the constable, and was not the trustee of the absconding debtor, nor was there any privity between the defendant and the absconding debtor. *Penniman & al.* v. *Ruggles & al.* 6 *Mass. Rep.* 166. If the officer himself would not be liable, his bailee cannot be.

2. That there was no debt due from the defendant, to the absconding debtor, at the time the copy was left; and his future liability was *contingent.* A mere contingency is not a subject of foreign attachment. *Davis & al.* v. *Ham & al.* 3 *Mass. Rep.* 33. *Wood* v. *Partridge,* 11 *Mass. Rep.* 488. 493.

3. That as the property had been applied, by the defendant's agent, to the payment of the debt for which it was attached, the defendant was no longer responsible.

SWIFT, Ch. J. It is a fundamental principle, and a prominent feature of the law of this state, that the whole property, real and personal, as well as the person, of a debtor, is liable to be attached by legal process, for the satisfaction of his debts, wherever it can be found. This is of great consequence in all commercial countries, where extensive credit is given. It is just that creditors should have every possible power to secure and enforce the payment of their debts; and this liability of debtors will tend to restrain them from wantonly running into debt, and at least prevent them from keeping their estate out of the reach of their creditors. They cannot practice such fraud and knavery as they often do in countries where estate cannot be attached, if the person can be had; where a debtor within the liberties of a prison may waste his goods in dissipation, and put his creditors at defiance.

Where a legal lien or incumbrance exists, property can only be taken subject to it. If it has been attached, and is in the hands of an officer or receipt-man, it may be attached again. The second officer cannot take it out of the possession of a prior officer, or a receipt-man; but they must hold it subject to the second attachment, and will be bound to deliver up such part as may remain after the prior attachments

*New-Haven,*
June, 1817.

Cole
*v.*
Wooster.

are satisfied. Unless this principle is adopted, it might be in the power of a favourite creditor, for a small debt, to screen from creditors a large estate. In these cases, it would be most convenient to deliver the attachment to the first officer; but as this cannot always be done, it is necessary to hold the estate liable to be attached by another officer, otherwise the object of an important regulation would be defeated; and it will be very easy for prior officers and receipt-men so to manage as to give subsequent attaching creditors all the benefit of the estate remaining after prior demands are satisfied, without subjecting themselves to any hazard or loss.

Where property once attached, is so circumstanced that it cannot be attached again, then a foreign attachment may be brought; and the holder will be considered as the agent or trustee of the owner. Though he may be a receipt-man, having received the estate from the officer, and responsible to him for it, yet if there be more than sufficient to pay the debt, he will then, by force of the statute, be deemed the agent and trustee of the owner, and accountable as garnishee for the surplus. He will have a right to hold and retain all that shall remain after the prior debt is satisfied, and will be bound to turn it out, when demanded on the execution, or will be liable for the amount on a *scire-facias.* Unless this practice be admitted, the estate of a debtor may be placed in the hands of a receipt-man, out of the reach of his creditors.

The copying creditor of an absconding debtor, acquires a claim against the garnishee for so much of the estate as remains after satisfying the prior attachment, by the levy of the execution, and sale in due course of law. The necessary consequence is, that this course must be pursued; and it is not in the power of the debtor, the garnishee, and the prior attaching creditor, to settle the debt, and take property to the amount of it, and deliver up the residue on the subsequent demand; for this would enable them to controul the legal rights of another, without his consent. If the proper steps of the law, are not taken by the first attaching creditor, to apply the property attached in satisfaction of his debt, then it becomes exonerated from the attachment, and the whole becomes chargeable with the demand of the copying creditor in the foreign attachment.

I am of opinion that a new trial ought to be granted.

New-Haven,
June, 1817.

Cole
v.
Wooster.

GOULD, J. If, by the law of the state, personal chattels, once legally attached, and while remaining in the hands of the officer, or his depositary, are still liable to attachment under a different process, and by a different officer; it must be conceded, that the direction to the jury, (so far, as relates to the goods,) was wrong. If, however, the question were *res integra*, I should hesitate in assenting to such a rule. It must certainly be attended, in practice, as it is in principle, with many difficulties—which might all be avoided, by putting the subsequent attachments into the hands of the same officer, who first seized the goods: in which case, they might be considered as in his custody, under the several successive attachments in his hands. But how the present course, which seems, indeed, to have become a common one, has ever been carried through, otherwise than by the courtesy of officers, and the acquiescence of debtors, I should be at a loss to explain. For it is difficult to understand, how one officer can create a *lien* upon personal chattels, while remaining in the exclusive and adverse possession of another. And it is equally difficult to conceive, how the attachment of property, so circumstanced, and without creating a lien upon it, can have any effect. As this practice, however, is considered by the court, as settled, I am bound to acquiesce in it.

The other Judges concurred in the opinion given by the Chief Justice.

New trial to be granted.