## CLARK vs. FOXCROFT.

Where the parties, pending an action of *assumpsit* between them, made a settlement of all their accounts, by which a balance was found due to the plaintiff, for which judgment was entered in his favor, by consent; and the settlement included some demands for which the writ contained no proper counts, and some which were not payable till after the action was commenced;—it was held that the lien created by the attachment was thereby dissolved *in toto*, so far as the rights of subsequent attaching creditors were concerned.

A surety has no right of action against the principal debtor, till he has paid or assumed the debt.

THIS was an action of the case against the late sheriff of this county, for the neglect of one of his deputies, in not levying and collecting an execution in favor of the plaintiff against one *Small*, where the deputy had attached goods on the original writ.   The defendant pleaded the general issue, and filed a brief statement, setting forth that he had seized the same goods and sold them to satisfy other executions against *Small*, in which the attachments were subsequent to the plaintiff's; the creditors having given him a bond of indemnity, alleging that the judgment in favor of the plaintiff was obtained by fraud and covin.

At the trial, before *Parris J.* the original writ of the plaintiff against *Small* was produced, which contained—1st, a general *indebitatus assumpsit* for $287, being the amount of sundry charges and payments mentioned in the account annexed;—2d, a count on a written memorandum or promise to pay $50;—3d, a count on a promissory note for $23;—4th, a count on another note or memorandum for $22;—5th, a count for $70 money laid out and expended;—6th, a count for $300 money had and received.   And it appeared by a paper produced by the defendant, that on the 20th day of *October*, 1826, while that suit was pending, *Clark* and *Small* made a general settlement of their dealings, upon which a balance of $705 was found due to *Clark*; whereupon *Small* signed a writing authorizing him to take judgment for that sum, in the suit then pending.   The judgment was accordingly taken, for 700 dollars, being the amount of the *ad damnum*.   The defendant also offered

Clark v. Foxcroft.

in evidence an original statement, made by the parties at the time of their settlement, showing that at this settlement an account was stated by *Clark* of all his demands against *Small*, containing all the items, but one, in the account annexed to the writ, the notes declared on, and divers other sums ; amounting in all to $817,90 ; and sundry credits of money and goods, which being deducted left the balance of $705 due as above stated ; and which was receipted as paid by the judgment above mentioned. Among these other sums was one charge of a note of hand of $68,32,—a hogshead of molasses, at $27,16,—cash paid for *Small* at the *Casco* bank, $48,02 —room rent, $15,—charter of the schooner *Fame* from *May* 4, to *July* 29, (which was four days after the action was commenced) $108,—and the following—" To a note of hand that I indorsed for you, now in the hands of *George Willis*, that I have become responsible to pay, $134,20."

In relation to this last charge it was proved that the note was dated *March* 30, 1826, and payable to order in six months ; and that *Clark* indorsed it for *Small's* accommodation, in consideration of *Small's* promise to secure him therefor, and keep him secured. This note was unpaid when the action was brought ; but was taken up by *Clark* before the settlement of *October* 20, 1826.

The defendant hereupon contended that the judgment against *Small* covered charges which were not embraced in either of the counts in the declaration ; particularly the charges for charter of the *Fame,* and for the note due to Mr. *Willis.*

The plaintiff contended—1st, that these charges were supported and covered by the last count in his declaration ; and 2dly, that if they were not, and were included in the judgment, this did not affect the attachment, the judgment, or the defendant's liability in this suit, any farther than the amount of those charges.

The Judge instructed the jury that under the count for money had and received the plaintiff could not properly support either the charge for charter of the *Fame,* or that for his liability to Mr. *Willis* as indorser ; and that if they were satisfied that said charges were not included in either of the other counts, and that they were allowed and included in the judgment by agreement of the parties, it was

such a fraud upon subsequent attaching creditors as would dissolve the attachment in the plaintiff's suit against *Small*. Under these instructions they returned a verdict for the defendant ; which was taken subject to the opinion of the court upon the points raised at the trial.

*Longfellow* and *Greenleaf*, for the plaintiff, argued, *first*, that the paper shown in evidence by the defendant, containing the items in the settlement of *Oct.* 20, 1826, was admissible only for the purpose of proving *actual* fraud and covin. Nothing *dehors* the record can be shown for any other purpose than that. *Willis v. Crooker*, 1 *Pick.* 204. And as the case was not put to the jury on the ground of actual fraud, and their finding negatives that imputation, the paper cannot and ought not to be regarded by the court for any purpose.

2. But if it *may* be regarded, yet the counts are supported by the evidence. The note due to Mr. *Willis* was a liability actually incurred at the time of commencing the suit ; and was extinguished before the judgment ; which may be sustained by the rule adopted in an action of covenant for an existing incumbrance on land sold with warranty, where the incumbrance is paid off after action brought. *Prescott v. Trueman*, 4 *Mass.* 627 ; *Wyman v. Ballard*, 12 *Mass.* 304 ; *Tufts v. Adams*, 8 *Pick.* 550. The excess of four days charter of the *Fame* may be cured by applying part of the money credits to that error. The count for money had and received is fully supported by the debtor's subsequent admission of a debt due. *Jackson v. Mayo*, 11 *Mass.* 147.

3. Yet admitting that those two items were improperly involved in the judgment, they only affect it *pro tanto*. It was a mere mistake. And herein is a difference between actual covin, and constructive or legal fraud. The former vitiates the whole mass into which it enters. The latter infects only so far as it extends, if that can be ascertained. The former, in the present case, is not imputable ; the latter is specifically defined.

4. But in any state of the case, in the absence of actual fraud, the judgment against *Small* cannot be impeached on the defendant's grounds, unless by writ of error.

Clark *v.* Foxcroft.

*Fessenden, Daveis* and *Deblois,* for the defendant, to the point that no charter-money was due till the end of the voyage or term, cited *Wood v. Patridge,* 11 *Mass.* 488 ; *Lane v. Penniman,* 6 *Mass.* 244 ; *Weston v. Down, Cowp.* 23. That the liability to Mr. *Willis* was improperly charged ; *Pierce v. Jackson,* 6 *Mass.* 244 ; *How v. Ward,* 4 *Greenl.* 202. That these items vitiated the judgment, in favor of subsequent attaching creditors ; *Cushing v. Gore,* 15 *Mass.* 74 ; *Pickering v. Lovejoy,* 13 *Mass.* 50 ; *Hill v. Hunnewell,* 1 *Pick.* 192 ; *Bean v. Parker,* 17 *Mass.* 603 ; *Denny v. Ward,* 3 *Pick.* 199 ; 5 *Greenl.* 247 ; 5 *Pick.* 303 ; *Adams v. Page,* 7 *Pick.* 542 ; *Tucker v. Welch,* 17 *Mass.* 164 ; *Wilder v. Finley,* 4 *Wend.* 100 ; 1 *Burr.* 467 ; 2 *Kent's Com.* 403. And that under the money counts no evidence could be admitted of any article, except of money paid or received. *Chity on Contr.* 183 ; 5 *Burr.* 2589 ; 1 *East* 1 ; 4 *Pick.* 60 ; 4 *D. & E.* 687 ; 13 *East* 20 ; 9 *East* 378 ; *Sheppard v. Palmer,* 6 *Conn.* 95 ; 4 *Wend.* 267 ; 1 *Mass.* 138 ; 1 *Dane's Abr.* 195—197 ; 1 *Esp.* 221 ; 5 *Greenl.* 504 ; *Osborne v. Churchman Cro. Jac.* 127 ; *Mooney v. Kavanagh,* 4 *Greenl.* 277.

MELLEN C. J. delivered the opinion of the Court at the ensuing *May* term in *Kennebec.*

The plaintiff's attachment was prior to that of the other creditors named in the brief statement ; but the defendant, representing those creditors contends that those proceedings which were had between *Clark* and *Small,* after the service of the writ and before the entry of judgment in the original action, have by legal operation released *Clark's* attachment *in toto ;* and if so, the defendant is entitled to judgment on the verdict. We will first state certain principles which have been settled, having a relation to the subject under consideration ; and then examine the facts reported, and see how far those principles are to influence the decision of this cause. In a civil action, when a special attachment of property has been made, or bail taken, on mesne process, if the plaintiff and defendant enter into a reference of that action and all demands, it is an admitted principle that such reference operates as an absolute and immediate release

or dissolution of the attachment or discharge of the bail ; and no after circumstance in the trial of the cause, will prevent the application of the principle. *Hill v. Hunnewell,* 1 *Pick.* 192, and *Mooney & Ux. v. Kavanagh,* 4 *Greenl.* 277. In such cases, it makes no difference whether any new demand is introduced beyond the original cause of action ; or if any such is introduced, whether it is allowed or not. The mere act of referring, is considered as producing the above mentioned effect, at least in those cases where the rule of reference is never discharged. This has been supposed to be founded on the principle that every man is presumed to know the law ; and that for the sake of a general settlement with his adversary, or for any other reason satisfactory to himself, a plaintiff consents to waive and does waive the security he holds in virtue of the attachment or of the bail bond. Unless such a principle should be adhered to, a plaintiff's demand might be essentially increased by the introduction of new causes of action, and in this manner a second attaching creditor might lose the benefit of his attachment, and, though with no immoral motive on the part of the plaintiff, such second creditor would be, in legal contemplation, defrauded of his rights. *Bean v. Parker,* 17 *Mass.* 603 ; *Dana v. Ward,* 3 *Pick.* 199. The case of *Adams & al. v. Paige & al.* 7 *Pick.* 542 was sustained on the ground of actual fraud to injure another creditor, and so is not applicable to the present case ; for in this there is no proof of such fraud.

Where A and B are creditors of the same person, and an attachment of the same property is made at the suit of each, A's attachment being prior to that of B ; should A have leave to amend his declaration, and, under such general leave, insert one or more counts, and therein set forth a new cause of action, such a proceeding dissolves or releases the attachment. *Willis v. Crooker,* 1 *Pick.* 204. It does not appear that there was any fraudulent intention in that case in making the amendment ; still, as the result of it would have prejudiced the rights of the second attaching creditor, had it been sanctioned, the court decided that its legal operation was to release the attachment. Whether this release is to be considered as the effect of a waiver of it, as in the case of a refer-

ence of all demands; or whether it is so considered, on the principle that it operates as a fraud in its consequences, in the same manner as a voluntary conveyance would, if sustained, in respect to creditors, is a question, perhaps, not necessarily requiring an answer. When such amendment is made for the very purposes of fraud on subsequently attaching creditors, there is no doubt as to its effect in the view of any one. In the case supposed, A loses the lien and benefit of his attachment, by inserting in his declaration a new cause of action under the common and general leave to amend. But such leave does not authorize the plaintiff to make such an amendment. In doing it, he in fact acts without any leave. The legal consequence must be the same if A, without asking any leave to amend, inserts one or more new counts, and thereby introduces one or more new causes of action ; for the effect must be the same as to subsequent attachments. Such are the principles of law as applied to the cases we have mentioned ; and it now remains for us to ascertain how far these principles are applicable to the case before us. No new counts have been added, with or without leave ; and the question is whether, in virtue of the agreement referred to at the bottom of the account which is annexed to the report, in connexion with the several counts in the declaration, and the charges contained in the stated account, the plaintiff has lost the benefit of his lien. The writ contains six counts. [Here the Chief Justice stated the substance of the counts, as before mentioned.]

It does not appear by the report of the Judge, that there was any objection to the introduction of any of the proof of those facts contained in it ; we are therefore to examine and judge of them in forming our opinion. The account on which the balance is stated, for which judgment was rendered, exhibits a debt against *Small* amounting to $817,90, and a credit to him amounting to $112,90, leaving, as due, a balance of $705,00. The *ad damnum* being only $700, judgment was rendered for no more than that sum. Among other items in this account, not stated or alluded to in the account annexed to the writ, is a charge of a note of hand for $68,32, principal and interest ; and sundry other charges amounting to $366,-30. The defendant contends that the last mentioned note, and

45

charges in the account, were not sued for and demanded in the ac-
tion; and, as the basis of this position, he says there is no count adap-
ted to the note or to many of the charges; and that some of the charg-
es must have been made before a right of action had accrued.    On
the contrary, the plaintiff contends that the last two counts are suf-
ficient to embrace all those demands and charges which were not
specially set forth or counted upon in the writ, though included in
the judgment; and that so no new cause of action was introduced.
by consent of the parties. We do not say that the note last mention-
ed might not have been given in evidence on the last count; and
that the five charges for money paid would not, *pro tanto*, support
the fifth count; and it is said that the charges for molasses, rent
and use of yard would have been good evidence on the last count,
and indeed that the charter and the claim on the *Willis* note would
have been so also; on the plain principle that when *Small* on the
20th of *October*, 1826, (a short time before judgment was entered)
acknowledged that the sum of $817,90, as charged, and the sum of
$112,90 as credited were both correct, and that the balance of
$705 was then a debt justly due from him to *Clark*, that moment
an action for monies had and received would lie for it. Admitting for
the sake of the argument, that this reasoning and conclusion
are correct, still the question returns, could such a count be good
for the recovery of such sums, without such an agreement and liqui-
dation ?    We apprehend the counsel for the plaintiff would not be
willing to answer this question in the affirmative.    We must then go
back to the commencement of the action, and settle the legal rights
of the parties as they then existed.    But if it is conceded that the
sum of $108 charged as due for charter of the schooner *Fame*,
might be given in evidence in support of the last count, and therefore
is no new cause of action, yet the last charge in the stated account,
we are all clearly of opinion, was totally inadmissible.    This charge
cannot be called a new cause of action, for from the very language
in which this charge is made (being $134,20) it is evident, that
even then no cause of action for the recovery of that sum had ac-
crued.    The charge is in these words, " To a note of hand that I
indorsed for you, now in the hands of *George Willis*, that I have be-

Clark *v.* Foxcroft.

come responsible to pay." Now we have decided in *Ingalls v. Dennet*, 6 *Greenl.* 79, that a surety has no right of action against his principal merely because the debt is not paid as soon as it is due ; nor until he has either paid it, or procured the discharge of the principal, by assuming it himself ; and neither of these things has yet been done. See also *McLellan v. Crofton* 6 *Greenl.* 307, and all the cases cited as to the point. From this review of the case it is manifest that the judgment contains at least $134,20 for which no right of action existed at the time of the judgment ; and we think at least $46,16 more which could not have been recovered on either of the counts, as the facts stood when the action was commenced, even if it could have been by reason of *Small's* consent. According to decided cases, no distinction exists as to a total or partial release of an attachment. On the ground of voluntary waiver, or fraud in law, and injury affecting the subsequently attaching creditors, we are all of opinion that the transaction of the 20th of *October*, 1826, between the plaintiff and *Small*, operated to dissolve the attachment made of his property ; and the result is that there must be

*Judgment on the verdict.*